1

2

3

4

5

6

7

8

9

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

10 VENI WAYNE FONOTI,                           )   1:08-cv-00844-OWW-JMD-HC
                                               )
11              Petitioner,                     )   FINDINGS AND RECOMMENDATION
                                               )   REGARDING PETITION FOR WRIT OF
12       v.                                     )   HABEAS CORPUS
                                               )
13 KEN CLARK,                                   )
                                               )
14              Respondent.                     )
   _____          )   OBJECTIONS DUE WITHIN THIRTY DAYS

15

16          Petitioner Veni Wayne Fonoti ("Petitioner") is a state prisoner proceeding with a petition for

17 writ of habeas corpus pursuant to 28 U.S.C. § 2254.

18                              **Procedural History**

19          On June 3, 1987, a jury convicted Petitioner of two counts of second degree murder.  (Pet. at

20 2).  The sentencing court sentenced Petitioner to fifteen years to life imprisonment.  (Id.).

21          The California Court of Appeal affirmed Petitioner's conviction on July 20, 1988.  (Pet. at 3).

22 Petitioner did not appeal his conviction to the California Supreme Court.  (Id.).

23          From 1995 to 2004, Petitioner filed several federal habeas petitions challenging his

24 conviction.  (Pet. at 4).  Each of the petitions was denied.  (Id.).[1]

25          Petitioner appeared before California's Board of Parole Hearings ("BPH") in September

26 2006.  (*See* Answer, Ex. 2).  The BPH denied Petitioner parole.  (Id.).

27 _____

28 [1] Petitioner's previous federal habeas petitions do not bar this action, as the instant petition does not challenge Petitioner's
   underlying conviction but instead challenges the state's decision to deny Petitioner parole.

1    Petitioner filed a petition for writ of habeas corpus in the California Superior Court on May

2    7, 2007.  (*See* Answer, Ex. 2).  The Superior Court denied Petitioner's state habeas petition in a

3    reasoned decision issued on October 1, 2007.  (Id.).

4    Petitioner filed a petition for writ of habeas corpus with the California Court of Appeal on

5    June 29, 2007.  (Answer, Ex. 3).  The Court of Appeal summarily denied the petition on July 25,

6    2007.  (Answer, Ex. 4).

7    Petitioner filed a petition for writ of habeas corpus with the California Supreme Court on

8    October 31, 2007.  (Answer, Ex. 5).  The California Supreme Court summarily denied the petition on

9    April 23, 2008. (Answer, Ex. 6).

10    Petitioner filed the instant petition for writ of habeas corpus in the Untied States District

11    Court, Central District of California on June 4, 2008.  (Doc. 1).  The case was transferred to the

12    Eastern District on June 18, 2008.  (Doc. 4).

13    Respondent filed an answer to the petition on January 7, 2009. (Doc. 18).  Petitioner filed a

14    traverse on February 10, 2009.  (Doc. 20).

15    **Factual Background**

16    On March 8, 1986, a police officer witnessed Petitioner engaged in a physical altercation with

17    a woman on a public street.  (Answer, Ex. 1 at 47).  Upon seeing the officer approach him, Petitioner

18    ran to his vehicle and began to drive away.  (Id.).  Petitioner refused the officer's order to pull over,

19    and a high-speed chase through city streets ensued.  (Id.).  Petitioner fled from pursuing officers at

20    speeds ranging from forty to one-hundred miles per hour, driving through stop signs, stop lights,

21    major intersections, and at times driving on the wrong side of the street. (Id.).  Petitioner's vehicle

22    ultimately collided with a vehicle stopped at a stop sign, killing a passenger in the stopped vehicle

23    immediately. (Id.).  The other occupant of the vehicle that Petitioner collided with died several hours

24    later at the hospital. (Id.).  On June 3, 1987, a jury convicted Petitioner of two counts of second

25    degree murder.  (Pet. at 2).

26    Petitioner appeared before California's Board of Parole Hearings (BPH) on September 28,

27    2006 for a parole suitability hearing. (Answer, Ex. 1 at 36).  The BPH denied Petitioner parole,

28    relying on the nature of Petitioner's commitment offense, Petitioner's unstable social history,

1  Petitioner's disciplinary record while incarcerated, Petitioner's risk of experiencing a relapse of

2  alcoholism, and Petitioner's insufficient participation in self-help and therapy programs while

3  incarcerated. (Answer, Ex. 1 at 38-40).

**Discussion**

### I. Jurisdiction and Venue

6       A person in custody pursuant to the judgment of a state court may file a petition for a writ of

7  habeas corpus in the United States district courts if the custody is in violation of the Constitution or

8  laws or treaties of the United States. 28 U.S.C. § 2254(a)[2]; 28 U.S.C. § 2241(c)(3); *Williams v.*

9  *Taylor*, 529 U.S. 362, 375, n.7 (2000). Venue for a habeas corpus petition is proper in the judicial

10 district where the prisoner is held in custody. *See* 28 U.S.C. § 2241(d).

11      Petitioner asserts that he is currently incarcerated at Corcoran State Prison in Kings County,

12 California, in violation of his right to due process under the United States Constitution. As Kings

13 County is within the Eastern District of California, the Court has jurisdiction to entertain the petition

14 and venue is proper in the Eastern District. 28 U.S.C. § 84; 28 U.S.C. § 2241(c)(3).

### II. Standard of Review

16      Section 2254 "is the exclusive vehicle for a habeas petition by a state prisoner in custody

17 pursuant to a state court judgment, even when the petitioner is not challenging his underlying state

18 court conviction." *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126 (9th Cir. 2006)

19 (quoting *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004)). Under section 2254, a petition

20 for habeas corpus may not be granted unless the state court decision denying Petitioner's state habeas

21 petition "was contrary to, or involved an unreasonable application of, clearly established Federal law,

22 as determined by the Supreme Court of the United States," or "was based on an unreasonable

23 determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.

---

25 [2] The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to all petitions for writ of habeas corpus filed

26 after its enactment. *Lindh v. Murphy*, 521 U.S. 320, (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied*,

27 520 U.S. 1107, 117 S.Ct. 1114 (1997), *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment

28 of the AEDPA and is therefore governed by its provisions.

1  § 2254(d).  "A federal habeas court may not issue the writ simply because that court concludes in its

2  independent judgment that the relevant state-court decision applied clearly established federal law

3  erroneously or incorrectly...rather, that application must be objectively unreasonable." *Lockyer v.*

4  *Andrade*, 538 U.S. 63, 75 (2003) (citations omitted).

5  **IV.      Petitioner's Due Process Claim**

6            **A. The Due Process Framework**

7            The Due Process Clause of the Fourteenth Amendment of the United States Constitution

8  prohibits states from depriving persons of protected liberty interests without due process of law.  *See,*

9  *e.g., Sass*, 461 F.3d at 1127.  The Court must "analyze Petitioner's due process claim in two steps:

10 'the first asks whether there exists a liberty or property interest which has been interfered with by the

11 State; the second examines whether the procedures attendant upon that deprivation were

12 constitutionally sufficient.'" *Id.* (quoting *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454,

13 460 (1989) *partially overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995)).

14           California law vests prisoners whose sentences provide for the possibility of parole with a

15 constitutionally protected liberty interest in the receipt of a parole release date.  *Irons v. Carey*, 505

16 F.3d 846, 850-51 (9th Cir. 2007); *Sass*, 461 F.3d at 1128; *McQuillion v. Duncan*, 306 F.3d 895, 903

17 (9th Cir. 2002) (citing *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 12

18 (1979)); *Biggs v. Terhune*, 334 F.3d 910, 915 (2003).  Although California's parole statute creates a

19 liberty interest protected by the Due Process Clause, *Irons*, 306 F.3d at 903, "since the setting of a

20 minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in [a

21 criminal prosecution proceeding] is not constitutionally mandated" in the parole context, *Pedro v.*

22 *Oregon Parole Bd.*, 825 F.3d 1396, 1399 (9th Cir. 1987).  Due process requires that a parole board's

23 denial of parole to a prisoner be supported by "some evidence."[3]  *Irons*, 505 F.3d at 851 (citing *Sass*,

24 461 F.3d at 1128-29 (quoting *Superintendent v. Hill*, 472 U.S. 445, 457(1985)); *see also Biggs*, 334

25 F.3d at 915; *McQuillion*, 306 F.3d at 904.  The requirement that the parole board's denial of parole

26

27

28 _____

[3] The Ninth Circuit is currently considering the "some evidence" standard en banc.  *Hayward v. Marshall*, 512 F.3d 536 (9th Cir. 2008) *reh'g en banc granted*, 527 F.3d 797 (2008).

1    to Petitioner be supported by some evidence is clearly established federal law.[4]  *See Irons*, 505 F.3d

2    at 851 (citing <u>Sass</u>, 461 F.3d at 1128-29 (quoting *Superintendent v. Hill*, 472 U.S. 445, 457(1985));

3    *see also Biggs*, 334 F.3d at 915; *McQuillion*, 306 F.3d at 904.

4            The "some evidence" standard is minimal, and is meant only to "[assure] that 'the record is

5    not so devoid of evidence that the findings of...[the] board were without support or otherwise

6    arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).  "Ascertaining whether [the some

7    evidence] standard is satisfied does not require...weighing of the evidence. ..the relevant question is

8    whether there is any evidence in the record that could support  the conclusion reached." *Hill*, 472

9    U.S. at 455-456.   Want of due process is not established by showing merely that incompetent

10   evidence was received and considered.  *United States ex rel. Vajtauer v. Commissioner of*

11   *Immigration*, 273 U.S. 103, 106 (1927).[5]  "Upon a collateral review in habeas corpus proceedings, it

12   is sufficient that there was some evidence from which the conclusion of the administrative tribunal

13   could be deduced." *Id.*  "The fundamental fairness guaranteed by the Due Process Clause does not

14   require courts to set aside decisions of prison administrators that have some basis in fact." *Hill*, 472

15   U.S. at 456 (citations omitted).

16            In assessing whether the parole board's denial of parole to Petitioner is supported by "some

17   evidence," the Court's analysis "is framed by the statutes and regulations governing parole suitability

18   determinations in the relevant state." *Irons*, 505 F.3d at 851.  Accordingly, the Court must look to

19   California law "to determine the findings that are necessary to deem a prisoner unsuitable for parole,

20   and then must review the record in order to determine whether the state court decision holding that

21   these findings were supported by 'some evidence' in Petitioner's case constituted an unreasonable

22   application of the 'some evidence' principle articulated in *Hill*." *Id.*

23

24   [4] Respondent contends that no clearly established federal law requires that California parole decisions be supported by "some
     evidence." "The Supreme Court need not have addressed the identical factual circumstances at issue in a case in order for

25   it to have created 'clearly established' law governing that case....rather, it is enough that the Supreme Court has prescribed
     a rule that plainly governs the petitioner's claim." *McQuillion*, 306 F.3d at 901 (citations omitted).  Further, this Court is

26   not authorized to disregard the settled law of the Ninth Circuit, which holds that the "some evidence" requirement is clearly
     established federal law in the parole context .  *See id.*

27

28   [5] *Vajtauer* concerned a collateral challenge to an immigration decision.  The Supreme Court cited *Vajtauer* in support of its
     formulation of the some evidence standard in *Hill*. 472 U.S. at 455.

Under California law, the paramount inquiry in determining whether to grant a prisoner parole is whether the prisoner "will pose an unreasonable risk of danger to society if released from prison." CAL. CODE. REGS. TIT 15, § 2402(a) (2008); *In Re Lawrence*, 44 Cal. 4th 1181, 1202 (Cal. 2008). Title 15, section 2402 of the California Code of Regulations sets forth the factors to be considered by the BPH in applying California's parole statute to Petitioner. Section 2402 provides in part:

> All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

CAL. CODE. REGS., tit. 15, § 2402(b) (2008). Factors supporting a finding of unsuitability for parole include a history of unstable relationships with others, serious misconduct while incarcerated, and psychological risk factors. CAL. CODE REGS., tit. 15, § 2402(c).

The factors listed in section 2402(c) "establish unsuitability [for parole] if, and only if, those circumstances are probative to the determination that a prisoner remains a danger to the public." *Lawrence*, 44 Cal.4th at 1212. "When a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision ...that the inmate constitutes a current threat to public safety...not merely whether some evidence confirms the existence of certain factual findings." *Id.* A rational nexus between the unsuitability factors applicable to the prisoner and the ultimate determination of dangerousness must exist. *See id.* at 1227

**B. Review of Petitioner's State Habeas Proceeding**

The Los Angeles Superior Court denied Petitioner's state habeas petition in a reasoned decision issued on September October 1, 2007. As the California Court of Appeal and the California Supreme Court both denied Petitioner's state habeas petitions without analysis, the Court must "look through" the summary dispositions to the last reasoned decision issued by the State. *Ylst v.*

1 *Nunnemaker*, 501 U.S. 797, 806 (1991). Accordingly, the Court reviews the reasoned decision of the

2 Los Angeles Superior Court denying Petitioner relief.

3      The Superior Court held that the BPH's denial of parole to Petitioner was supported by some

4 evidence of current dangerousness. (Answer, Ex. 2 at 2). The Superior Court noted the BPH's

5 permissible reliance on the nature of the commitment offense, Petitioner's history of serious

6 disciplinary infractions while in prison, and Petitioner's less-than-favorable psychological report. (Id.

7 at 3). Each of these factors may be considered by the BPH in determining parole suitability. *See*

8 Cal. Code Regs., tit. 15, §§ 2402(c)(3)-(6).

9      The record demonstrates that Petitioner has committed numerous serious disciplinary

10 infractions since his conviction. While incarcerated, Petitioner has been found guilty of stabbing

11 another inmate, trafficking contraband, manufacturing alcohol, weapons possession, stealing, and

12 other unlawful acts. (Answer, Ex. 1 at 53). The California legislature has determined that a history

13 of serious disciplinary infractions while incarcerated tends to demonstrate unsuitability for parole.

14 *See* Cal. Code Regs., tit. 15, § 2402(c)(6). Although Petitioner's disciplinary record has improved

15 substantially over the past ten years, there was a sufficient nexus between Petitioner's disciplinary

16 history in prison and the BPH's finding of current dangerousness at the time of Petitioner's 2006

17 parole hearing, especially given that Petitioner's commitment offense involved alcohol abuse and

18 that Petitioner has committed numerous alcohol-related offenses while incarcerated.

19      The record also supports the BPH's findings with respect to Petitioner's psychological

20 evaluation. The psychologist noted that alcohol abuse is a significant risk factor for Petitioner and

21 that Petitioner had suffered a relapse of alcoholism in the past. (Answer, Ex. 1 at 63). The BPH was

22 troubled by the statement in the psychologist's report which states "the present evaluator does not

23 presently believe [Petitioner] would not continue violent or drug activities in a controlled or

24 community environment."[6] (Id. at 63). The psychologist's report also stated that alcohol use is a

25 _____

26 [6] The Court notes, as did the BPH, that the psychologist's statement in this section of the report appears contradictory. The next sentence after the statement quoted above provides: " [Petitioner's] risk would be low to moderate compared to the

27 average person." (Id. at 63). Nevertheless, statements throughout the report provide "some evidence" to support the BPH's determination that Petitioner would pose a risk of experiencing a relapse of alcoholism, which would in turn create a

28 heightened risk of Petitioner engaging in violent acts. *See* Answer, Ex. 1 at 59-63 (discussing commitment offense, history of alcohol abuse, and risk of relapse).

1    "significant risk factor and precursor to violence" for Petitioner.  (Id. at 64).  Given the

2    psychologist's report and the nature of Petitioner's commitment offense, the BPH was concerned by

3    the fact that Petitioner had ceased participating in substance abuse therapy. (Id. at 41-42).  In light of

4    Petitioner's history, the commitment offense, and Petitioner's failure to continue substance abuse

5    programing, a rational nexus between Petitioner's risk of alcoholism, as discussed in the

6    psychologist's report, and current dangerousness existed at the time of Petitioner's 2006 parole

7    hearing.

8          Given the record, the Superior Court reasonably concluded that the BPH's finding that

9    Petitioner posed an unreasonable risk of danger at the time of his 2006 parole hearing was supported

10   by some evidence.  Factors "which taken alone may not firmly establish unsuitability for parole may

11   contribute to a pattern which results in a finding of unsuitability." CAL. CODE. REG. tit 15 § 2402(b).

12   This Court is precluded from re-weighing the evidence considered by the BPH.  *Hill*, 472 U.S. at

13   456.  Accordingly, Petitioner is not entitled to relief under section 2254.

14                                **1. Petitioner's Arguments**

15         Petitioner contends that the BPH improperly prohibited him from presenting evidence that

16   Petitioner believes mitigates his crime.  Specifically, Petitioner complains that he was not allowed to

17   present 1) evidence of his intoxication at the time of the offense, 2) evidence that the victim's family

18   reached a settlement with the police department in connection with a civil suit, and 3) evidence of a

19   head injury suffered by Petitioner before the crime.  In all likelihood, presentation of this evidence

20   would have been of no help to Petitioner, and could have possibly been to his detriment.  *See In re*

21   *Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008) (attempts to minimize crime may support finding

22   of unsuitability).  The BPH was undoubtably aware that Petitioner was intoxicated at the time of the

23   offense, as the parole evaluation report prepared prior to the 2006 hearing detailed this fact.  (*See*

24   Answer, Ex. 1 at 47) (parole evaluation report discussing commitment offense).  Likewise, the BPH

25   was aware of Petitioner's head injury, the long range effects of which had not been determined at the

26   time of the 2006 parole hearing.  (Id. at 61) (discussing medical history).  Finally, the Court notes

27   that any negligence on behalf of the police who pursued Petitioner in no way diminishes Petitioner's

28   culpability for the crime of second degree murder.

1    Petitioner's final contention is that his continued custody violates customary international

2    law, as Petitioner is not a United States citizen.  Petitioner's contention lacks merit.  Customary

3    international law is limited to those clear and unambiguous rules by which states universally abide,

4    or to which they accede, out of a sense of legal obligation and mutual concern.  *See, e.g., Abdullahi*

5    *v. Pfizer, Inc.*, 562 F.3d 163, 174 (2nd Cir. 2009).  Petitioner points to no authority in support of his

6    conclusory statement that the State's denial of parole to him violates customary international law.

7                                              **RECOMMENDATION**

8    Based on the reasons stated above, the Court RECOMMENDS that the petition for writ of

9    habeas corpus be DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter

10   judgment for Respondent.

11   This Findings and Recommendation is submitted to the Honorable Oliver W. Wanger, United

12   States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

13   of the Local Rules of Practice for the United States District Court, Eastern District of California.

14   Within thirty (30) days after being served with a copy, any party may file written objections with the

15   court and serve a copy on all parties.  Such a document should be captioned "Objections to

16   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

17   filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.

18   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c).  The

19   parties are advised that failure to file objections within the specified time may waive the right to

20   appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

21   IT IS SO ORDERED.

22   **Dated:     October 8, 2009                            /s/ John M. Dixon**

                                         UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28